# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAYMUNDO V. REYNA, | ) | 1:07-cv-00077 GSA |
| | ) | |
| Plaintiff, | ) ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

## BACKGROUND

Plaintiff Raymundo V. Reyna ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") ending his period of disability and disability insurance benefits pursuant to Title II of the Social Security Act ("Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed his initial application for disability insurance benefits under Title II of the Act on December 19, 2000. AR 81-83. Plaintiff alleged that he had been unable to work since

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 21, 2007, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1  October 15, 2000, due to leukemia.  AR 108.  The Social Security Administration found him
2  disabled due to leukemia, and awarded him disability insurance.  AR 24.
3        On June 24, 2004, the Social Security Administration determined that Plaintiff's health
4  had improved and that he was able to work.  The Social Security Administration ceased
5  Plaintiff's benefits.  AR 31-34.  Plaintiff requested reconsideration and appeared before a
6  disability hearing officer, who also found that Plaintiff was no longer disabled.  AR 35-36, 41-53.
7  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 54-55.  On
8  July 19, 2006, ALJ Michael Haubner held a hearing and on September 21, 2006, determined that
9  Plaintiff's disability ceased on August 31, 2004.  AR 15-23, 415-438.  The Appeals Council
10 denied review on November 22, 2006.  AR 10-12.  Thereafter, the Appeals Council set aside its
11 November 22, 2006, denial to consider additional information.  AR 6-9.  The Appeals Council
12 again denied review.  AR 6-9.
13       <u>Hearing Testimony</u>
14       On July 19, 2006, ALJ Haubner held a hearing in Fresno, California.  AR 415-438.
15 Plaintiff appeared with his attorney, Robert Christenson.  AR 417.  A Spanish interpreter also
16 was present at the hearing.  AR 417.
17       Plaintiff was born on December 16, 1950.  AR 423-424.  He testified that the last date he
18 worked was in 2000 and the last time he looked for work was in early 2006.  AR 424.  He was
19 looking for field work.  AR 425.  He would not have taken a job if they gave it to him because it
20 was picking and he cannot carry the bag.  AR 425.  He has not had any alcohol or beer since
21 1997.  AR 425.
22       Plaintiff lives with his wife and his 14-year-old son.  AR 425.  His wife sometimes works
23 outside the home.  AR 425.  At the time of the hearing, she was not working outside the home.
24 AR 425.  She is receiving food stamps.  AR 425-426.  She is not on any kind of disability.  AR
25 426.  His son is not on any disability.  AR 426.
26       Plaintiff testified that he drives an automatic car.  AR 426.  On average, he drives two
27 times a day.  AR 426-427.  He takes his son and his grandchild to and from school.  AR 427.
28

The grandchild does not live with him. AR 427. No one else lives in his house besides him, his wife and his son. AR 427.

Plaintiff testified that he goes to church once every month. AR 427. He goes out to eat once a month. AR 427. Plaintiff testified that he does not go shopping at the market for groceries. AR 427. He does not go shopping for other items for personal needs, clothes or anything. AR 427-428. Plaintiff subsequently testified that he has been shopping at a store. AR 428. The last time he went shopping was the day before the hearing. AR 428. He went shopping for soda. AR 428. On average, he goes shopping about three times a week. AR 428-429.

Plaintiff testified that he does not go to visit with family or friends outside of his home. AR 429. They come to visit him. AR 429. He does not talk with neighbors when he is outside. AR 429. He does not visit any family members at their homes. AR 429. They come to visit him. AR 429. His children come every day. AR 429. He has other children besides his fifteen-year-old son. AR 429. He has more than one grandchild. AR 429. He sees those other grandchildren every day. AR 429. He does not see them or watch them when there is no other adult in the house. AR 429. When his wife is working, his kids do not come over and leave their kids. AR 429.

Plaintiff testified that he does not have any pets. AR 429. He does not do any yard work. AR 429. He lives in an apartment. AR 430. He is able to care for his own personal needs, brush his teeth, shave, comb his hair, dress, and shower. AR 430. He does not cook or prepare meals. AR 430. He will get himself a sandwich every three days. AR 430. He does not wash dishes. AR 431. He washed dishes years ago. AR 431. He does not do the laundry, take out the trash or make his bed. AR 431. He does not do anything. AR 431. He does not change the sheets on his bed. AR 431. He does not sweep or vacuum inside the house. AR 431. There is nothing that he can do. AR 432.

Plaintiff testified that he does not do any exercise. AR 432. He can lift and carry 15 pounds with both hands. AR 432. He can stand about 30 minutes before he has to sit down and rest. AR 432. He can walk two blocks, but gets tired. AR 432. He can sit in a chair for 15

1  minutes at one time. AR 432. He has fatigue. AR 432. The longest he can pay attention at one
2  time is 15, 20 minutes. AR 432. He has to lie down three times during daylight hours for an
3  average of twenty minutes each time. AR 432-433. He does not lie down at the same time every
4  day. AR 433. It varies. AR 433.
5       Plaintiff testified that he does not speak or understand any English. AR 433. He took his
6  driver's license test in Spanish. AR 433. He can read and understand the road signs in English.
7  AR 433. He cannot read a newspaper headline in English. AR 433. He cannot read a lot in
8  Spanish. AR 433. He does not have "much school." AR 433. The highest grade he completed
9  in school was second. AR 433.
10       Plaintiff testified that he does not have any hobbies. AR 433. He watches the news. AR
11  433. On an average day, he watches TV for two hours. AR 433-434. When his family is over,
12  he spends three hours, on average, visiting. AR 434. He does not have a savings or a checking
13  account. AR 434. He pays bills in cash. AR 434. He does not receive any income other than
14  the food stamps. AR 434. When his wife works, he gets her income. AR 434.
15       Plaintiff testified that he is fully compliant with all his treatment recommendations and
16  medications. AR 434. He weighs 225. AR 434. He did not remember how tall he is. AR 434.
17  He testified that he is about 5'11". AR 434. His driver's license says 5'8", which sounded right
18  to him. AR 434-435. The doctor has told him to lose weight. AR 435. The doctor has not told
19  him to stick to a low fat diet. AR 435. He does not follow any kind of diet to lose weight. AR
20  435.
21       Plaintiff testified that his disabling conditions are myeloid leukemia, obesity, fibrosis,
22  hemochromatosis, early cirrhosis of the liver, history of diabetes, lower back pain, arthritis and
23  pain in his hand and left shoulder. AR 436. He told his cancer doctor, "Dr. Pari," about the left
24  shoulder pain about a month and a half prior to the hearing. AR 436. He told the doctor about
25  his low back pain about a month prior to the hearing. AR 436.
26       Plaintiff takes pills for his diabetes. AR 436. He always takes his diabetes pills when he
27  is supposed to take them. AR 436.
28

Medical Evidence

On October 13, 2000, Plaintiff sought treatment at Kaweah Delta District Hospital for complaints of a fever for approximately one month. AR 212-216. On physical examination, it was noted the Plaintiff was obese and had extremely swollen gingiva. AR 214. He was diagnosed with acute gingivitis and fever. AR 215, 217.

On October 19, 2000, Plaintiff was admitted to Kaweah Delta District Hospital for complaints of chronic fevers. AR 194. An US Abdominal Echogram Survey completed on October 19, 2000, was normal. AR 210. A bone marrow biopsy was completed and Plaintiff was diagnosed with acute myelogenous leukemia and thrombocytopenia. AR 194-195, 201-202. Plaintiff was transferred to Stanford University Hospital for ongoing care. AR 195.

A chest view taken on October 22, 2000, showed no active cardiopulmonary disease. AR 200. Laboratory data reviewed by Joan Etzell, M.D., at UCSF Stanford Health Care revealed acute myelomonocytic leukemia with easinophilia. AR 205.

On December 28, 2000, Rabia Parveez, M.D., of Cancer Care Associates of Fresno, Inc., conducted a hematology consultation. AR 250-254. Dr. Parveez reported that Plaintiff had received induction chemotherapy and was hospitalized from October 25, 2000 through November 17, 2000. AR 250. A bone marrow performed on November 28, 2000, was normocellular. AR 250. Dr. Parveez recommended four cycles of consolidation chemotherapy. AR 254.

On February 8, 2001, Plaintiff saw Dr. Parveez for a follow-up examination. AR 248. Dr. Parveez indicated that Plaintiff recently had been discharged from the hospital following chemotherapy. AR 248. Dr. Parveez opined that Plaintiff's acute myeloid leukemia was in complete remission. AR 248.

On February 19, 2003, Plaintiff sought medical treatment at Kaweah Delta Health Care District for complaints of chest pain. AR 305, 306-309. Plaintiff reported intense pulling of the upper right chest "like a bolt of lightening." AR 307. Chest X-rays were normal. AR 310. An ECG suggested "consider left atrial enlargement," but was otherwise normal. AR 311. The treating doctor was not sure why Plaintiff was having lacinating pains. AR 308.

On June 3, 2003, Plaintiff saw William Barreto, PA-C, at Family Healthcare Network for follow-up on his diabetes and bilateral low back pain. AR 229. On examination, Plaintiff had minimal bilateral lumbar spasm and tenderness to palpation. AR 229. PA Barreto diagnosed Plaintiff with stable diabetes mellitus, acute myelogenous leukemia and osteoarthritis. AR 229.

On June 26, 2003, Plaintiff saw Dr. Parveez at the California Cancer Center for a medical oncology follow-up examination. AR 244. Plaintiff denied any complaints. AR 244. Dr. Parveez reported that the laboratory data showed a white blood cell count of 4.8, hemoglobin of 13.9 and platelets of 142. AR 244. Dr. Parveez opined that Plaintiff's acute myeloid leukemia was in "complete remission." AR 244.

On July 2, 2003, Plaintiff saw PA Barreto for a follow-up on his diabetes mellitus. AR 227. PA Barreto diagnosed Plaintiff with stable diabetes mellitus, elevated liver function tests, osteoarthritis and acute monocytic leukemia. AR 227. Plaintiff reported that Naprosyn helped his arthritis pain and he used it sparingly. AR 227.

On September 24, 2003, Plaintiff sought treatment from Rogelio Ortega, M.D., at Family Health Care. AR 225. Dr. Ortega opined that Plaintiff's diabetes was "very well controlled" and agreed with discontinuing Plaintiff's Glucovance provided that Plaintiff followed a strict diet, exercised daily and checked his blood sugars. AR 225.

On October 6, 2003, Plaintiff saw Dr. Parveez at the California Cancer Center for a medical oncology follow-up examination. AR 241. Plaintiff denied any complaints. AR 241. Dr. Parveez opined that Plaintiff had acute myeloid leukemia in remission. AR 241.

On November 25, 2003, Plaintiff sought treatment from Dr. Ortega at Family Health Care for complaints of upper back pain. AR 221, 222. Plaintiff was assessed with mild discomfort to the intrascapular region to his thoracic back with no overt abnormalities. AR 222. His plan of treatment included Advil, a CBC to check his platelet count and a WBC count for monitoring. AR 221, 222.

On December 2, 2003, Plaintiff visited Family Health Care for his CBC lab results because of his history of leukemia. AR 220. Plaintiff had no complaints. AR 220.

An acute hepatitis panel completed on January 26, 2004, was negative. AR 238.

1   A February 5, 2004, abdominal ultrasound of Plaintiff revealed fatty liver changes. AR
2   237. The remainder of the ultrasound examination was negative. AR 237.
3   On February 6, 2004, Plaintiff saw Alvin Y. Au, M.D., F.A.C.G., for a gastroenterology
4   evaluation. AR 261-262. Following examination, Dr. Au differentially diagnosed Plaintiff with
5   nonalcoholic hepatitis, history of diabetes mellitus, obesity and rule out chronic hepatitis
6   infection. AR 262. Dr. Au recommended additional liver tests. AR 262.
7   On February 19, 2004, Plaintiff saw Dr. Parveez at the California Cancer Center for
8   follow-up. AR 234. Plaintiff complained of occasional abdominal pain, but had no other
9   complaints. AR 234. Dr. Parveez reported that Plaintiff's acute myeloid leukemia was in
10  remission. AR 234. Plaintiff had elevated liver enzymes. AR 234. A hepatitis work-up was
11  negative and an abdominal ultrasound showed fatty liver changes. AR 234. Dr. Parveez
12  indicated that they would continue to monitor Plaintiff. AR 234.
13  On May 6, 2004, Plaintiff underwent a CT of his abdomen. AR 260. The CT revealed a
14  normal liver and biliary tract, with no evidence of a liver parenchymal lesion or obstruction, and
15  "probably benign adenomas." AR 260, 278.
16  On May 18, 2004, Plaintiff saw Dr. Parveez for an oncology follow-up. AR 403. Dr.
17  Parveez assessed Plaintiff with elevated liver enzymes and abdominal pain. AR 403. He was
18  referred to a gastroenterologist. AR 403.
19  In June 2004, Plaintiff underwent needle core biopsies of his liver. AR 257. Plaintiff
20  was diagnosed with grade 3/4 periportal lymphocytic inflammation and stage II-III fibrosis. AR
21  257. He had extensive macrovesicular fatty change. AR 257.
22  On July 1, 2004, Plaintiff saw Sandra Soares, FNP, at Family Healthcare Network for
23  complaints of back pain in his upper shoulder and generalized body aches. AR 332. On
24  examination, Plaintiff had pain to palpation in the lower back, greater near the liver area. AR
25  332. FNP Soares diagnosed Plaintiff with pain, history of acute monocytic leukemia, obesity and
26  diabetes. AR 332. She ordered a CBC with a peripheral smear and a chest x-ray. AR 333-334.
27  Plaintiff was given a Vicodin prescription for his pain. AR 333.
28

On July 2, 2004, Plaintiff sought treatment at Kaweah Delta Health Care District. AR 266. Chest views taken that day showed no active pulmonary disease or acute abnormality. AR 270.

On July 9, 2004, Plaintiff sought treatment Family Healthcare Network. AR 322. Plaintiff complained of back pain, which was helped with Vicodin. AR 322. Plaintiff had increased liver enzymes. AR 322.

On July 15, 2004, Plaintiff sought treatment from Christopher Rodarte, M.D., following a liver biopsy and iron studies. AR 320. Dr. Rodarte diagnosed Plaintiff with hemochromatosis, which is a problem with over storage of iron and is treated by phlebotomy. AR 320.

On July 21, 2004, Plaintiff underwent an abdominal ultrasound. AR 325. The study was viewed as "somewhat suboptimal due to patient's size and some gas interference." AR 325. Plaintiff had a normal general survey of the abdomen by ultrasound. AR 325.

On August 6, 2004, Plaintiff was Dr. Rodarte for follow-up of his hemochromatosis. AR 316. Plaintiff denied any significant complications from a recent phlebotomy. AR 316.

On August 25, 2004, Plaintiff again saw Dr. Rodarte. AR 313, 314. Dr. Rodarte indicated that Plaintiff had a history of hemochromatosis, diabetes and hyperlipidemia. AR 314. Plaintiff was taking Glucovance and was getting phlebotomies. AR 314. Dr. Rodarte opined that Plaintiff's diabetes and hyperlipidemia were stable. AR 314. Plaintiff was not on any medications for his hyperlipidemia. AR 314. Dr. Rodarte assessed Plaintiff with hemochromatosis and recommended continued phlebotomies until Plaintiff's ferritin was normal. AR 314.

On November 4, 2004, Plaintiff saw Dr. Parveez for a medical oncology follow-up visit. AR 397. Dr. Parveez opined that Plaintiff's acute myeloid leukemia seemed to be in complete remission. AR 397.

On January 17, 2005, Plaintiff saw Dr. Parveez for medical oncology follow-up treatment. AR 394. Plaintiff complained of upper right quadrant pain. AR 394. He was following up with a GI doctor for the pain. AR 394.

On March 17, 2005, Plaintiff saw Monica Manga, M.D., at Family Healthcare Network for follow-up. AR 363. Plaintiff complained of "increased fatigability." AR 363. He was assessed with hemochromatosis and diabetes. AR 363.

On April 13, 2005, Plaintiff saw Dr. Rodarte for a follow-up visit. AR 359. Dr. Rodarte opined that Plaintiff had excellent control of his diabetes and his hemochromatosis was improving. AR 359.

On April 26, 2005, Plaintiff underwent needle biopsies of his liver. AR 366. He was diagnosed with grade 2-3 chronic hepatitis, grade 2-3 fibrosis, periportal fibrosis and portal-to-portal septa without obvious cirrhosis. AR 366. There was no evidence of hemachromatosis. AR 366.

On May 4, 2005, Plaintiff saw Dr. Parveez for medical oncology follow-up treatment. AR 391. Plaintiff reported one episode of night sweats, but was doing and feeling fine. AR 391. Dr. Parveez indicated the Plaintiff's counts were normal. AR 391.

On August 24, 2005, Plaintiff saw Dr. Parveez for follow-up treatment. AR 388. Plaintiff reported right upper quadrant pain. AR 388. Dr. Parveez recommended follow-up with Plaintiff's gastroenterologist. AR 388.

On September 7, 2005, Plaintiff saw Matthew Kosel, PA, at Family Healthcare Network. AR 356-357. PA Kosel assessed Plaintiff with diabetes mellitus type 2 and hemochromatosis. AR 356.

On September 19, 2005, Plaintiff saw Dr. Rodarte. AR 354. Dr. Rodarte noted that Plaintiff was doing extremely well and had no complaints. AR 354. Dr. Rodarte assessed Plaintiff with hemochromatosis and diabetes. AR 354. Dr. Rodarte opined that Plaintiff's diabetes was "slightly worse." AR 354.

On September 29, 2005, Plaintiff underwent a CT scan of his liver. AR 353. The scan revealed probable "benign adenomas," but no other significant abnormality. AR 353.

On October 27, 2005, Plaintiff saw Dr. Rodarte for follow-up of his hemochromatosis. AR 352. There were no labs for review. AR 352.

On November 28, 2005, Plaintiff saw Dr. Rodarte for his hemochromatosis. AR 350. Dr. Rodarte noted that Plaintiff's hemochromatosis was "slightly better." AR 350. Dr. Rodarte thought Plaintiff needed "to continue to be on disability for his acute myeloleukemia, but [he thought] it was in remission for his diabetes and for his hemochromatosis and weakness." AR 350. Plaintiff had new onset high blood pressure. AR 340.

On November 28, 2005, a prescription note from Family HealthCare included a handwritten statement that Plaintiff "[n]eeds to be on disability for hemochromatosis, acute myeloid leukemia [and] possible early cirrhosis." AR 340.

On February 15, 2006, Plaintiff saw Dr. Rodarte and reported no significant complaints. AR 349. Dr. Rodarte noted that Plaintiff was "[o]verall doing extremely well." AR 349. Dr. Rodarte assessed Plaintiff with diabetes with questionable control and hypertension. AR 349.

On February 16, 2006, Plaintiff saw Dr. Parveez for a follow-up visit. AR 382-383. Dr. Parveez indicated that Plaintiff was in complete remission from his leukemia, but had non-alcoholic liver cirrhosis. AR 383.

On March 8, 2006, Plaintiff saw Dr. Rodarte for a follow-up appointment. AR 345. Plaintiff had no significant complaints. AR 345. Dr. Rodarte noted that Plaintiff was "[e]ssentially doing very well." AR 345. Plaintiff's liver enzymes and total iron body were normal and his ferritin was significantly decreasing. AR 345.

On March 28, 2006, Todd Frederick, M.D., of the Physician Foundation at California Pacific Medical Center evaluated Plaintiff. AR 341-343. Dr. Frederick noted that Plaintiff had chronic hepatitis C with elevated iron saturation levels and elevated ferritins. AR 341. Testing following a therapeutic phlebotomy program confirmed normalization of Plaintiff's ferritin. AR 343. Dr. Frederick recommended a repeat liver biopsy, iron measurements, screening for liver cancer, PPI therapy for Plaintiff's symptoms of dyspepsia, full abdominal ultrasound and weight loss with a low-fat diet. AR 343.

On March 29, 2006, Plaintiff saw Dr. Rodarte for follow-up. AR 344. Plaintiff reported he was "overall doing extremely well except occasionally some left shoulder pain with certain movement." AR 344. Dr. Rodarte assessed Plaintiff with stable diabetes, a history of

hemochromatosis, which was stable, a history of scute myeloleukemia in remission and possible left AC arthritis. AR 344. Dr. Rodarte planned to try Plaintiff on Naprosyn. AR 344.

On April 5, 2006, ALJ Haubner requested additional information Dr. Rodarte regarding a prescription pad note stating that Plaintiff needed to be on disability. AR 184. ALJ Haubner sought information, including the bases for Dr. Rodarte's conclusions, Plaintiff's specific limitations, and whether Dr. Rodarte's opinions regarding functional capacity were based on Plaintiff's subjective limitations. AR 184.

On April 13, 2006, Plaintiff saw Dr. Parveez for follow-up. AR 378-379. Dr. Parveez noted that Plaintiff had increased ferritin because of liver cirrhosis secondary to non-alcoholic hepatitis and was getting a phlebotomy every month. AR 378. Plaintiff complained of a cough and left shoulder pain. AR 378.

On April 14, 2006, views were taken of Plaintiff's left shoulder and chest. AR 375. His heart, lungs and left shoulder were negative. AR 375.

On April 20, 2006, Plaintiff sought follow-up treatment from Dr. Parveez. AR 373-374. Following examination, Dr. Parveez assessed Plaintiff with acute myeloid leukemia in remission, liver cirrhosis and left shoulder pain. AR 374. An x-ray of his shoulder was "fine." AR 374.

On June 6, 2006, Plaintiff saw Dr. Frederick in the liver clinic. AR 404-406. Plaintiff complained of headaches and feeling tired much of the time. AR 404-405. Dr. Frederick opined that Plaintiff's fatigue was "very likely related to his hemachromatosis and his advanced fibrosis" and his headaches may "be related to his lack of phlebotomy. AR 405. Dr. Frederick recommended life-long, continuing maintenance phlebotomy for Plaintiff. AR 405. He also recommended efforts to improve fatty liver disease, ongoing liver cancer screening, and checks for hepatitis A, B and C. AR 406.

ALJ's Findings

The ALJ determined that since February 6, 2001, the time of Plaintiff's most recent favorable medical decision, his medical impairment (leukemia) had improved. AR 20-21. The ALJ also determined that, as of August 31, 2004, the claimaint had medically determinable impairments of a history of myeloid leukemia in complete remission, a history of diabetes

mellitus, fibrosis, a history of hemochromatosis, obesity and rule out early cirrhosis. AR 20. The ALJ concluded that, as of August 31, 2004, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20. The medical improvement of Plaintiff's leukemia was related to the ability to work and, as of August 31, 2004, Plaintiffs impairments did not cause more than a minimal impact on his ability to perform basic work activities. AR 21. Accordingly, the ALJ found that Plaintiff's disability ceased on August 31, 2004. AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the correct legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

The ALJ must follow an eight-step analysis in determining whether a claimant continues to be disabled. 20 C.F.R. §§ 404.1594(f). Benefits cannot be terminated without evidence of medical improvement. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). Medical improvement is any decrease in the medical severity of an impairment and is determined by a

comparison or prior and current medical evidence that shows improvement in the symptoms, signs, or laboratory findings associated with the impairment. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). The improvement must be related to the ability to do work. 20 C.F.R. §§ 404.1594(b)(2), 416.994(b)(1)(ii). When the Commissioner decides to terminate benefits, the burden of establishing a continuing disability lies with the claimant. *Brown v. Heckler*, 713 F.2d 441, 442 (9th Cir. 1983). However, an earlier finding of disability gives rise to the presumption that the condition still exists. *Id*.

In applying this analysis to Plaintiff's claim, the ALJ found that: (1) Plaintiff has not engaged in substantial gainful activity between February 6, 2001, when he was found to be disabled, and August 31, 2004, the date claimant's disability ended; (2) Plaintiff has a history of myeloid leukemia in complete remission, a history of diabetes mellitus, fibrosis, a history of hemochromatosis, obesity and rule out early cirrhosis, but these impairments do no meet or medically equal the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4; (3) the medical evidence establishes that there has been improvement in Plaintiff's medical condition since August 31, 2004; (4) the medical improvement is related to Plaintiff's ability to work; and (5) Plaintiff does not have an impairment or combination of impairments that is severe. The ALJ therefore found Plaintiff no longer disabled as of August 31, 2004, and terminated benefits. AR 20-23.

Plaintiff argues that (1) the ALJ failed to consider the assessment of Dr. Todd Frederick; (2) the ALJ failed to find that his advanced fibrosis secondary to hemochromatosis, as well as concomitant fatty liver disease and associated fatigue, were severe impairments; and (3) the ALJ failed to find that Plaintiff's fatigue precluded work.

## **DISCUSSION**

A.   Assessment of Dr. Frederick

Plaintiff contends that the ALJ erred by failing to consider or to give reasons for rejecting the June 2006 assessment completed by Dr. Todd Frederick. Contrary to Plaintiff's contention, the ALJ considered Dr. Frederick's June 2006 report and cited it when assessing Plaintiff's medically determinable impairments to include a history of hemochromatosis. AR 20.

Plaintiff also argues that Dr. Frederick's assessment supports the claimant's contention that fatigue precludes work. Plaintiff's argument is without merit. There is no indication in the record that Dr. Frederick considered Plaintiff's fatigue to preclude work. Instead, Dr. Frederick opined that Plaintiff's "fatigue is very likely related to his hemachromatosis and his advanced fibrosis." AR 405. As pointed out by the Commissioner, the mere existence of a condition or limitation is not per se disabling. 42 U.S.C. § 1382c(a)(3)(A) (an individual is considered disabled only if he is unable to engage in any substantial gainful activity by reason of a physical or mental impairment); *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982). Further, the ALJ rejected Plaintiff's symptom testimony as "not entirely credible." AR 21. As discussed more fully below, the ALJ made specific findings related to Plaintiff's credibility, including his evasiveness at hearing, his inconsistent testimony and his testimony regarding daily activities. AR 22-23.

Insofar as Plaintiff relies on the Rules promulgated by the Commissioner for the proposition that adjudicators must consider medical source statements as to an individual's residual functional capacity, this reliance is inapplicable to the present case. Dr. Frederick did not provide an assessment of any work restrictions that Plaintiff might have or render an opinion regarding Plaintiff's functional capacity or ability to work. Dr. Frederick merely assessed the possible source of Plaintiff's alleged fatigue.

Plaintiff also asserts that the ALJ failed to mention and to discuss Plaintiff's April 2006 biopsy, which revealed chronic hepatitis, fibrosis, peripheral fibrosis and portal-to-portal septa without obvious cirrhosis. As previously noted, the mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Further, the ALJ determined that Plaintiff's period of disability ended as of August 2004. AR 23. Plaintiff originally was found disabled based on his myelocytic leukemia. AR 20. The record reflects that Plaintiff's leukemia is in remission and has been since February 2001. AR 248. Plaintiff does not appear to contest the determination that his leukemia was in complete remission as of August 2004. Instead, Plaintiff relies on medical evidence related to diagnoses and assessments that took place in 2006, i.e., Dr. Frederick's June 2006 assessment and an April

2006 liver biopsy. If Plaintiff's condition deteriorated in 2006, well after the August 31, 2004, cessation date, then he arguably could file a new application for disability.

### B. Severity of Impairments

Plaintiff next argues that the ALJ erred by failing to find that his advanced fibrosis and concomitant fatty liver disease were severe. Plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p.

Here, the record is devoid of evidence demonstrating that Plaintiff's diagnoses of fatty liver disease or advanced fibrosis limited his ability to work or perform basic work activities. The ALJ considered whether Plaintiff's impairments caused a significant limitation in his ability to perform basic work activities. AR 21. In so doing, the ALJ reviewed Plaintiff's fibrosis liver, but also noted that Plaintiff had normal liver function. AR 21. Additionally, the record reflects

that Plaintiff appeared to have been successfully phlebotomized. AR 343. And, in 2006, reported feeling "reasonably well" and experiencing only a "little trouble with fatigue. AR 342.

      C.      <u>Plaintiff's Fatigue</u>

Finally, Plaintiff argues that the ALJ erred by failing to find that Plaintiff's fatigue from his advanced fibrosis and concomittant fatty liver disease precluded work. To support his argument, Plaintiff contends that the ALJ improperly discredited the claimant's subjective allegations. Plaintiff's argument is without merit.

First, there are numerous notations throughout the record between 2004 and 2006 regarding Plaintiff's overall well-being. For instance, in 2004, Plaintiff reported occasional abdominal pain, but no other complaints, despite having fatty liver changes. AR 234. In July 2004, after being diagnosed with hemochromatosis, Plaintiff denied any significant complications from a phlebotomy. AR 316. In April 2005, his hemochromatosis was improving. AR 359. In May 2005, Plaintiff saw Dr. Parveez for medical oncology follow-up treatment and was doing and feeling fine. AR 391. In September 2005, Dr. Rodarte noted that Plaintiff was doing extremely well and had no complaints, despite having hemochromatosis and diabetes. AR 354. Although an opinion was rendered in November 2005 that Plaintiff needed to be on disability for hemochromatosis, acute myeloid leukemia and possible early cirrhosis, a few months later, in February 2006, Plaintiff saw Dr. Rodarte and reported no significant complaints. Further, Dr. Rodarte opined that Plaintiff was "[o]verall doing extremely well." AR 349. According to the record, Plaintiff continued to do well in 2006. On March 8, 2006, Plaintiff again saw Dr. Rodarte for a follow-up appointment and had no significant complaints. AR 345. Dr. Rodarte indicated that Plaintiff was "[e]ssentially doing very well." AR 345. Later in March 2006, Plaintiff reported to Dr. Rodarte that he was "overall doing extremely well except occasionally some left shoulder pain with certain movement." AR 344. Additionally, Plaintiff himself testified that he was looking for field work in 2006. AR 424.

Second, the ALJ made specific findings related to Plaintiff's credibility. An ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is

not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ made specific findings related to Plaintiff's credibility.  First, the ALJ noted that Plaintiff had a "dismal work history" with only two full substantial gainful years of employment during his lifetime.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("extremely poor work history" supported credibility determination).  Next, the ALJ noted that Plaintiff was "extremely evasive at the hearing" and cited a number of examples demonstrating Plaintiff's inconsistent testimony.  AR 22.  For instance, the ALJ referenced Plaintiff's initial denial that he went shopping, but his later admission, after multiple follow-up questions from the ALJ, that he went shopping for small items three times a week.  AR 22.  In addition, the ALJ referenced inconsistencies in Plaintiff's testimony regarding his level of education, his ability to understand English and his ability to concentrate.  AR 22.  Finally, the ALJ considered Plaintiff's "fairly wide range of activities of daily living," which included driving a car every day, attending church, eating out, visiting with others every day for three hours a day, seeing his grandchildren every day and looking for work in January 2006.  AR 23.  If a claimant is able to spend a

17

1  substantial part of his day engaged in pursuits involving the performance of physical functions
2  that are transferable to a work setting, a specific finding as to this fact may be sufficient to
3  discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595,
4  600 (9th Cir. 1999).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Raymundo Reyna.

IT IS SO ORDERED.

Dated: **January 16, 2008**         /s/ **Gary S. Austin**
                                  UNITED STATES MAGISTRATE JUDGE